***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer on December 20, 1999 and plaintiff suffered an injury by accident arising out of and in the course of his employment on or about that date.
3. Atlantic Mutual Insurance Company is the carrier on the risk.
4. The parties stipulated into evidence the following documents: (a) plaintiff's medical records and rehabilitation reports; (b) Industrial Commission Forms 18, 19, 21, 25R, 60, Form 33 dated January 16, 2002, Form 33 dated April 23, 2002, Form 33R dated April 16, 2002, Form 33R dated May 16, 2002, Form 33 dated March 17, 2003, Form 33R dated March 28, 2003; (c) Opinion and Award of December 23, 2003 by Deputy Commissioner Nancy Gregory; and (d) all discovery requests and responses.
5. Plaintiff presented the following issue at the hearing before the deputy commissioner: (a) whether Plaintiff is permanently and totally disabled as a result of his compensable injury.
6. Defendants presented the following issues at the hearing before the deputy commissioner: (a) whether plaintiff has complied with vocational rehabilitation; and (b) whether plaintiff is permanently and totally disabled as a result of his compensable injury.
 ***********
Based upon the foregoing Stipulations and the evidence presented, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 33 years old and had a high school diploma. Plaintiff had taken a real estate course through Century 21 and received a real estate certificate for the course work, but he never took the North Carolina Real Estate Licensing Examination. Plaintiff worked his entire adult life as a Computer Navigational Control Operator.
2. On December 15, 1999, plaintiff suffered an injury by accident when he was lifting a heavy bag of material and felt pain in his back. Defendants accepted plaintiff's back injury as compensable via an Industrial Commission Form 60 filed on March 16, 2000. Defendants began paying plaintiff's medical and temporary total disability benefits.
3. On December 20, 1999, Plaintiff sought treatment with Dr. Fabienne Ransom of Gaston Occupational Health and Rehabilitation Center. Dr. Ransom performed an MRI of plaintiff's spine, which showed a herniated disc.
4. On January 20, 2000, plaintiff underwent an L5-S1 microdiscetomy foraminotomy and hemilaminectomy with operating microscope performed by Dr. Greenberg of the Neuroscience and Spine Center of the Carolinas.
5. Plaintiff participated in physical therapy following surgery and continued to suffer some pain, but the weakness improved in his leg according to Dr. Greenberg in a March 14, 2000 note. On April 10, 2000, Dr. Greenberg wrote to plaintiff's family physician, Dr. James Costner, with concerns regarding plaintiff's continuing pain. Dr. Greenberg noted that plaintiff appeared to be getting worse since his surgery, but that plaintiff's pain and numbness did not fit a dermatomal pattern for his injury. Dr. Greenberg obtained a repeat MRI, which showed no signs of residual disc problems.
6. On June 2, 2000, plaintiff sought a second opinion with Dr. Raymond Sweet who found plaintiff at maximum medical improvement with a 10% permanent partial disability rating to his back. Dr. Sweet recommended that plaintiff undergo a Functional Capacity Evaluation and return to light duty work. Dr. Sweet found that plaintiff had a psychological overlay with either a hysterical component or malingering.
7. Plaintiff was seen by a pain management specialist, Dr. Kern Carlton, on July 14, 2000. At that time, plaintiff presented with chronic lower back and right leg pain. Dr. Carlton treated plaintiff with Neurontin and diagnosed plaintiff with post laminectomy syndrome and depression.
8. Plaintiff underwent a Functional Capacity Evaluation on November 2, 2000, which revealed that he is capable of sedentary work. Dr. Carlton found that plaintiff could return to work with lifting restrictions of 10 pounds and the ability to alternate between sitting and standing. In addition, Dr. Carlton restricted plaintiff to no repetitive lifting, twisting or bending.
9. Rachel Wesley, plaintiff's vocational rehabilitation manager, testified at the hearing. Ms. Wesley was able to create a vocational plan for plaintiff on October 9, 2001; however, a job search did not begin for plaintiff until after that time.
10. Ms. Wesley testified that plaintiff has been consistently compliant with vocational rehabilitation in general, but particularly since June 2003.
11. Ms. Wesley testified that she believed retraining was an option for plaintiff. She also testified that she continues to seek positions for the plaintiff as a hotel clerk, customer service representative, gate tender, movie theater ticket taker and other opportunities, which would allow plaintiff to alternate between sitting and standing. Ms. Wesley continues to believe that there are vocational possibilities open to plaintiff.
12. Plaintiff did check into retraining at Gaston Community College, but he did not have the money to attend. Plaintiff sought this retraining prior to the 2002 hearing before Deputy Commissioner Gregory, but the carrier refused to pay for retraining according to Ms. Wesley's testimony.
13. Ms. Wesley reported to her supervisor in the summer of 2003 that she was running out of options as far as getting plaintiff back to work. She then testified that her supervisor told her to expand the job search and consider retraining. At the hearing of this matter in January 2004, six months after discussing retraining with her supervisor, Ms. Wesley testified that she had just learned of the Sylvan Institute for the first time from a supervisor.
14. The parties stipulated to the medical records in this matter. The last record of treatment for plaintiff was with Dr. Carlton at the Rehab Center. On that date, Dr. Carlton noted that plaintiff was "capable of gainful employment." In addition, Dr. Carlton noted, "I encouraged him to continue with his job search."
15. While plaintiff may have many obstacles to overcome in his vocational pursuits, based on the greater weight of the evidence of record, including the medical and vocational evidence as well as plaintiff's age and education, plaintiff has failed to prove that he is permanently and totally disabled or that vocational rehabilitation would be futile at this time.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to carry his burden that he is permanently and totally disabled. Furthermore, considering plaintiff's age, education, work restrictions and limited vocational efforts, vocational rehabilitation efforts would not be futile. N.C. Gen. Stat. § 97-29;Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1992); Bridgesv. Linn-Corriher, 90 N.C. App. 397, 368 S.E.2d, 388 (1998).
2. Defendants should use their best efforts either to find Plaintiff suitable employment or provide retraining, which they denied in the past, as set out by the Industrial Commission Rules for Utilization of Rehabilitation Professionals, particularly under Section II Purpose of the Rules. Plaintiff should comply with these efforts.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay plaintiff for his temporary total disability at a rate of $280.01 per week subject to a reasonable attorney's fee of every fourth check to be sent directly to plaintiff's counsel. However, plaintiff's claim for permanent and total disability is DENIED at this time.
2. Defendants shall continue to pay all reasonably necessary medical expenses.
3. Defendant and Plaintiff shall cooperate as to future vocational rehabilitation efforts as set out in Conclusion of Law number 2.
4. Defendants shall pay the costs.
This the ___ day of November 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER